UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| REBECCA L. DUERSON, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:07-cv-070-SEB-JMS |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

### ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW

Rebecca L. Duerson ("Duerson") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

### I. BACKGROUND

Duerson applied for DIB on September 4, 2003, alleging an onset date of August 6, 2003.[1] Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a video hearing was conducted on August 8, 2006. Duerson was present in Indianapolis, Indiana, accompanied by her attorney. The ALJ presided over the hearing from Tucson, Arizona. Medical and other records were introduced into evidence. Duerson testified. The ALJ denied Duerson's application on August 23, 2006. On November 21, 2006, the Appeals Council denied Duerson's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] On remand, the ALJ shall clarify whether an application for Supplemental Security Income ("SSI") was filed. The ALJ does not discuss any such application, but the record refers to such application. (R. at 23-26, 30).

The ALJ's decision included the following findings: (1) Duerson met the nondisability requirements of the Act and was insured for benefits through the date of the ALJ's decision; (2) Duerson had not engaged in substantial gainful activity since the alleged onset of disability; (3) Duerson's asthma was a "severe" impairment, based upon the requirements in the Regulations; (4) the medically determinable impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P of Regulations No. 4; (5) Duerson's allegations regarding her limitations were not totally credible for the reasons set forth in the decision; (6) Duerson had the following residual functional capacity ("RFC"): light level functioning on a routine and sustained basis except as limited by the need to avoid work-related exposure to dusts, chemicals, and fumes; (7) Duerson's past relevant work as a department store cashier did not require the performance of work-related activities precluded by her RFC; and (8) Duerson's medically determinable asthma did not prevent her from performing her past relevant work. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Duerson was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been

2

defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.   Analysis

In this case, the ALJ determined that Duerson had a "severe" impairment consisting of asthma, but that she could perform her past relevant work as a department store cashier. Duerson argues that the ALJ's decision is not supported by substantial evidence at steps three and four of the sequential analysis.

At step three, the ALJ stated that he considered, but ruled out, Duerson's contention that she satisfied Listing 3.03B (R. at 19). Listing 3.03B requires asthma with:

> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03B.

Asthma "attacks" are defined as:

> prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(C).

Duerson sets forth the following treatment history:

| Date | Event |
|---|---|
| 9/3/03 | emergency room visit for asthma (R. at 118-20) |
| 9/29/03 | emergency room visit for asthma (R. at 115, 124-25, 174) |
| 9/30/03-10/3/03 | hospitalization for asthma (R. at 69, 115, 155-64, 177-82) |
| 12/16-17/03 | hospitalization for asthma (R. at 122, 138-40, 142-44) |
| 2/9/04 | emergency room visit for asthma (R. at 106-108) |
| 3/24/04 | emergency room visit for asthma (R. at 99-100) |

Duerson contends that during the one-year period from August 6, 2003, through August 5, 2004, her asthma required physician intervention at least five times, with at least one of those interventions requiring a four-day hospitalization which counts as two interventions under Listing 3.03B. The ALJ discussed generally several of Duerson's medical contacts from September 2003 through December 2003, but he did not specify upon what evidence he relied in concluding that Duerson's asthma did not satisfy the requirements of Listing 3.03B. (R. at 19). He did not mention the 2004 emergency room treatments. (R. at 99-108). Accordingly, the court cannot determine whether the ALJ considered each of the above interventions in relation to the severity and frequency requirements of the Listing at issue. It also appears from the hearing transcript that the ALJ mistakenly believed that to be considered a qualifying "attack," a claimant must be admitted into a hospital, not just seen during an emergency room visit. (R. at 222). This interpretation of the regulations is too stringent. *See* 3.00C ("episodes . . . requiring intensive treatment, . . . in a hospital, emergency room or equivalent setting"). In addition, the Commissioner has not rebutted any of this evidence. Rather, he argues that the State Agency physicians' opinion should control the issue. Not only did the ALJ not mention, much less rely on, the State Agency physicians in making his step three decision, but those physicians did not consider all of the evidence, including the more recent medical contacts in February and March 2004. (R. at 92) (acknowledging only one hospitalization admission and two emergency room visits). For these reasons, the ALJ's determination at step three is not supported by substantial evidence. On remand, the ALJ shall reconsider whether Duerson satisfied the criteria of Listing 3.03B or whether her asthma was medically equivalent to the listing for at least a one year period based on the above evidence.

Duerson also contends that the ALJ's step four decision is erroneous in several respects. At step four, the ALJ determined that Duerson was able to perform her past relevant work as a department store cashier as actually and as generally performed. (R. at 20-21).

Duerson argues that the ALJ did not reconcile the fact that his finding that Duerson could perform light work (requiring the ability to stand and/or walk for a total of about six hours in an eight hour workday)(Social Security Ruling ("SSR") 83-10) conflicted with Duerson's uncontradicted report that her past cashier job actually required her to stand/walk eight hours a day. (R. at 76). The Commissioner asserts that Duerson did not allege that she had difficulty standing or walking eight hours a day. Consulting examining physician Dr. Bichey opined, however, that "[s]he has a normal ability to sit, however, any kind of physical activity would exacerbate her asthma." (R. at 169). He further opined that given Duerson's lung condition, it would be difficult for her to walk for 2 hours in an 8 hour day. (R. at 168). The ALJ did not mention this report. In addition, Duerson's written report of the cashier job could very well have related to her gas station job ("sliding milk on counter"). (R. at 76, 224). The ALJ ruled out that job because of chemicals and fumes. (R. at 21). There was no specific testimony taken about any department store work (R. at 76, 224), and Duerson testified that all of her past work exposed her to too many chemicals, odors, or smoke. (R. at 224).

4

Duerson further points out that the ALJ cited no evidence as to the demands of a department store cashier as that job is generally performed. No vocational expert testimony was taken in this case. The Commissioner did not respond to this claim. Absent any evidence supporting the ALJ's determination as to how a particular job was generally performed and that Duerson could perform such a job, the court cannot review and sustain such a finding. The court acknowledges that a claimant is "not disabled" at step four if she retains the RFC to perform *either* the actual functional demands of a particular past relevant job, *or*, the functional demands of the job as generally required by employers throughout the national economy. *See Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004) (citing Social Security Ruling 82-61); *Brewer v. Chater*, 103 F3d 1384, 1393 (7th Cir. 1997), *overruled on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). The court does not sustain the step four finding in this case under either scenario.

Duerson further points out that the ALJ did not discuss the fact that her past work as a department store cashier was part-time, three days a week, and whether such work constituted substantial gainful activity ("SGA"). The amount of time spent at work is important, but not dispositive, in determining whether past work is "substantial gainful activity." *Wolfe v. Shalala*, 997 F.3d 321, 324 (7th Cir. 1993). Here the ALJ did not obtain detailed earnings statements to determine whether the work rose to the level of SGA. The amounts estimated by the parties fall in between the presumptive amounts showing whether a claimant has or has not engaged in SGA. *See* 20 C.F.R. § 404.1574(b). The court cannot in the first instance determine whether Duerson's work as a department store cashier constituted SGA.

For each of the reasons discussed herein, the court cannot trace the path of the ALJ's reasoning at step four of the analysis. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted). The ALJ's finding at step four is not supported by substantial evidence. Accordingly, the case shall be remanded for further proceedings on this basis as well.

### III.  CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions at step three and step four of the sequential analysis are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).  Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 01/25/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana